# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

### CASE NO. 1:17-CV-24108-JLK

ESTATE OF RENE DIAZ,

      Plaintiff,

v.

ROY CHEATUM,
EUGENE CARLTON,
DR. INEIRO ALARCON,
RICARDO MENENDEZ, and
ANDREW ACKLEY

      Defendants.

_____/

## ORDER GRANTING IN PART
## DEFENDANTS' RULE 12 MOTION TO DISMISS

**THIS MATTER** comes before the Court upon Individual Federal Defendants' ("Defendants") Rule 12 Motion to Dismiss (DE 24), filed June 29, 2018.[1]

### I.    BACKGROUND

This constitutional deliberate indifference action arises out of the denial of medical care for Rene Diaz while he was a prisoner at Federal Correctional Institution Miami ("FCI-Miami"). Prior to his imprisonment, Diaz had undergone gastric bypass surgery (DE 1, ¶ 28), of which he had informed the medical staff of the prison (*id.* ¶ 29). In November 2013, Diaz sought medical care at the prison medical clinic for "pain and discomfort in his abdomen area" (*id.* ¶ 31). In December 2013, the pain and discomfort continued, and Diaz was unable to have bowel movements despite having eaten solid foods (*id.* ¶ 32). Throughout that month, Diaz visited the

---

[1] The Court has also considered Plaintiff's Response in Opposition (DE 26), filed August 1, 2018; and Defendants' Reply (DE 29), filed August 21, 2018.

prison medical clinic multiple times and each time requested to be "evaluated by a physician in the outside hospital," but was denied (*id.* ¶ 33), culminating in a visit on December 22, 2013 by which point he was "experiencing extreme pain and discomfort" and "requested to be brought to the outside hospital to be treated for the blockage in his intestines and/or colon" (*id.* ¶ 34). On December 23, 2013, Diaz went unconscious, and, despite "other federal inmates summon[ing] for medical assistance," was still not transferred to an outside hospital (*id.* ¶ 35). At 7:19 p.m., the prison staff called 911, resulting in Miami-Dade Fire Rescue transferring Diaz to the emergency room at Jackson Hospital, where he died from septic shock and total organ failure (*id.* ¶¶ 36–37). The Complaint states that Diaz's "small intestine twisted and blocked the fluid and waste from passing through his intestines and colon" (*id.*).

Rene Diaz's Estate ("the Estate") brings a Complaint listing five individual federal defendants employed by the Bureau of Prisons at FCI-Miami: (1) Warden Roy Cheatham;[2] (2) Associate Warden Eugene Carlton; (3) Clinical Director Dr. Ineiro Alarcon; (4) Health Services Administrator Ricardo Menendez; and (5) Assistant Health Services Administrator Andrew Ackley (*see* DE 1, at 1, 4–5). The Estate claims that Defendants, acting under color of law, were deliberately indifferent to Diaz's medical needs in violation of the Eighth Amendment (Count I) and engaged in a civil conspiracy to violate his Eighth Amendment rights (Count II) (*id.* at 12–15). In support, the Estate alleges that, in 2013, Warden Cheatham and Associate Warden Carlton "directed the custody staff not to authorize the release" of prisoners to outside hospitals, on threat of "suspension, loss of pay and/or demotion" (*id.* ¶ 26). The Estate alleges that, "in adherence to the directive" of Defendants Cheatham and Carlton, Defendants Alarcon, Menendez, and Ackley "refused or intentionally failed to allow [Diaz] to be examined by [an]

---

[2] In its Complaint, the Estate identifies the Warden as "Roy Cheatum" (*see* DE 1), but Defendants' motion clarifies the spelling as "Cheatham" (DE 24, at 11).

outside hospital physician," where the proper examination (imaging and blood tests) could have diagnosed his intestinal blockage (*id.* ¶¶ 33–34).

On November 8, 2017, the Estate filed its Complaint in this Court (*see* DE 1). As of March 21, 2018, only Defendants Cheatham, Alarcon, and Menendez had been served (*see* DE 14; DE 17; DE 18).[3] On June 29, 2018, defense counsel appeared on behalf of all five defendants (DE 23), despite that two (Carlton and Ackley) had not been served. The instant Motion to Dismiss was filed the same day (*see* DE 24). The motion requests the case be dismissed due to lack of personal jurisdiction pursuant to Rule 12(b)(2) where the procedural requirements for service of process were not met (*id.* at 18), and failure to state a *Bivens* claim on which relief can be granted pursuant to Rule 12(b)(6) (*see generally id.*). The motion also raises a defense that Defendants are entitled to qualified immunity based on the Estate's allegations (*id.* at 26).[4]

## II. DISCUSSION

### A. Legal Standard on Motions to Dismiss

In deciding a motion to dismiss, a court accepts the plaintiff's allegations as true and construes them in the light most favorable to the plaintiff. *M.T.V. v. Dekalb Cty. Sch. Dist.*, 446 F.3d 1153, 1156 (11th Cir. 2006). To survive a Rule 12(b)(6) motion to dismiss, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads

---

[3] On April 26, 2018, after the 120-day deadline for perfecting service of process, the Estate also docketed summonses on the Attorney General and U.S. Attorney in accordance with Rule 4(i)(3) (*see* DE 20; DE 21), which requires the United States also be served in a suit against a federal officer or employee in his or her individual capacity. Fed. R. Civ. P. 4(i)(3).

[4] The defense of qualified immunity may be asserted at the motion to dismiss stage. *See Estate of Cummings v. Davenport*, 906 F.3d 934, 939–40 (11th Cir. 2018) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). Allegations absent supporting facts are not entitled to this presumption of veracity. *Id.* at 681. The Court must dismiss a complaint that does not present a plausible claim demonstrating entitlement to relief.

## B. Lack of Personal Jurisdiction

Defendants contend that there are three problems with personal jurisdiction due to incomplete service of process: (1) service has not been executed on Defendants Carlton and Ackley; (2) service was late pursuant to Rule 4(m) for Defendants Cheatham, Alarcon, and Menendez (*see* DE 24, at 18); and (3) service has not been perfected on any of the five defendants in their individual capacities without service on the United States itself, *see* Fed. R. Civ. P. 4(i)(3) (*see* DE 24, at 18; DE 29, at 8).

The Court finds that Defendants were not harmed by late service on Defendants Cheatham, Alarcon, and Mendez, and that therefore Defendants' motion to dismiss is not valid on that point. However, Defendants' motion *is* valid as to Defendants Carlton and Ackley, who to this date have not been served over a year after this action was filed, and therefore those defendants should be dismissed.

## C. Failure to State a Cause of Action

### 1. The Estate's Allegations Do Not Sufficiently State a *Bivens* Claim

#### a. Complaint Does Not Sufficiently Allege Any of the Defendants Intentionally Refused to Provide Diaz with Medically Necessary Treatment

The Estate claims that Defendants in their individual capacities each violated the Eighth Amendment's prohibition against cruel and unusual punishment (*see* DE 1, at 12–15) by "act[ing] with deliberate indifference to Rene Diaz's serious medical needs" (*id.* ¶ 39). The

Supreme Court has long recognized an implied constitutional right of action (*i.e.*, a *Bivens* cause of action) for a prison official's deliberate indifference to the safety of a prisoner by intentional failure to provide medically necessary treatment. *Carlson v. Green*, 4446 U.S. 14 (1980) (approving a *Bivens* claim for failure to treat an inmate's asthma); *see also, e.g., Kothmann v. Rosario*, 558 F. App'x 907 (11th Cir. 2014) (cause of action for deliberate indifference where prison official denied prisoner's requests for hormone treatment for Gender Identity Disorder); *Alsobrook v. Alvarado*, 477 F. App'x 710, 712 (11th Cir. 2012) (cause of action for deliberate indifference where prison official knew about inmate's serious injuries but "delayed for almost two hours in taking him for medical treatment, causing further injury, when there was no justifiable reason for the delay").

Here, the Estate alleges that Diaz "requested to be brought to the outside hospital to be treated for the blockage in his intestines and/or colon," but was denied (*id.* ¶ 34). Diaz's surgical history of a gastric bypass, of which the Estate alleges "medical staff" was informed (*see id.* ¶ 29), together with the allegation that proper treatment of Diaz's condition required "hospital imaging equipment or blood testing to determine the blockage in [his] intestinal tract" (*id.* ¶ 33), could support a claim for unconstitutional deliberate indifference. However, what is missing from the Complaint are specific factual allegations that any of the defendants to this action, all high-level policy officials at the prison, were aware of any of Diaz's requests for outside medical treatment, or were aware that he medically needed such treatment, to support that any of them *intentionally* denied him medically necessary treatment.

## b. No Special Circumstances Warrant Expansion of *Bivens* Remedy to Adoption of a Policy

In 2017, the Supreme Court clarified that "[i]f [a] case is different in a meaningful way from previous *Bivens* cases decided by this Court, then the context is new" and "a special factors

analysis is required." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1859–60 (2017) (rejecting a *Bivens* claim for "challenge to the confinement conditions imposed on illegal aliens pursuant to a high-level executive policy"). The special factors analysis in part involves asking if "Congress has created any alternative, existing process for protecting the injured party's interest that itself may amount to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages." *Id.* at 1858 (internal quotation marks and citations omitted). Further, "if there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy . . . courts *must* refrain from creating the remedy in order to respect the role of Congress." *Id.* (emphasis added). With *Abbasi*, the Supreme Court restated that "a *Bivens* action is not 'a proper vehicle for altering an entity's policy,'" *id.* at 1860 (quoting *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 74 (2001)), or even "call[ing] into question the formulation and implementation of a general policy," *id.*

Defendants argue that the Estate's Complaint contains allegations that present a new *Bivens* context where it alleges that Defendants, in an effort to save money, "made and enforced a *de facto* policy to punish any mid-level custody official who authorizes the transfer or transport of an inmate . . . to an outside hospital" (DE 1, ¶ 5; *see also id.* ¶¶ 22–27) that itself constituted deliberate indifference to Diaz's medical needs (*see* DE 24, at 20).[5] In a special factors analysis, Defendants argue that alternative statutory processes are available for the Estate to challenge (or were available for Diaz himself to prospectively challenge) such a "*de facto* policy" adopted by

---

[5] The Complaint elaborates, for example:
> [Defendant Cheatham], in an effort to save money and increase his performance rating within the hierarchy of the executive staff within the Federal Bureau of Prisons . . . directed [Defendants] Carlton, Alarcon, Menendez, and Ackley to cut costs of providing medical care and treatment to federal prisoners, especially those federal inmates who need to be treated and cared for by outside hospital physicians and medical practitioners.

(DE 1, ¶ 23).

Defendants that would have applied to all inmates (DE 24, at 21–23). These range from administrative remedies established by the Prison Litigation Reform Act ("PLRA") (28 C.F.R. §§ 542.10–542.19) to a suit for negligence pursuant to the Federal Tort Claims Act. Further, Defendants note that Congress has repeatedly stopped short of creating a statutory damages remedy, including with the passing of the PLRA (DE 24, at 23–24). *Accord Abbasi*, 137 S. Ct. at 1865 ("It could be argued that this suggests Congress chose not to extend the *Carlson* damages remedy to cases involving other types of prisoner mistreatment."). For these reasons, the Court concludes that a new judicially-created *Bivens* damages remedy based on allegations that any of the Defendants adopted a policy or practice that would have applied to all inmates at the prison is not warranted. *See id.* at 1858–60.[6]

## III. CONCLUSION

Therefore, Rene Diaz's Estate has not sufficiently alleged a plausible *Bivens* cause of action for Defendants Cheatham, Alarcon, and Menendez's deliberate indifference to Diaz's safety in violation of the Eighth Amendment, where the Supreme Court has recognized such a cause of action for an official's intentional refusal to provide medically necessary treatment, but not for adoption of a policy to cut back on healthcare spending in general, and no special circumstances warrant expanding the cause of action here. Accordingly, it is **ORDERED, ADJUDGED, and DECREED** that Defendants' Rule 12 Motion to Dismiss **(DE 24)** is hereby **GRANTED in part**, so that the Complaint **(DE 1)** is hereby **DISMISSED without prejudice**. In addition, Defendants Eugene Carlton and Andrew Ackley are hereby **DISMISSED** from the

---

[6] Moreover, the Estate's allegation that Defendants "retaliate[ed] for [Diaz's] complaining about the lack and care and treatment" (DE 1, ¶ 4), only alluded to once in the Complaint, is not pleaded according to the requirements of Rule 8(a). *See* Fed. R. Civ. P. 8(a). Regardless, Defendants are correct that the Supreme Court has specifically rejected expanding the *Bivens* remedy to encompass retaliation (DE 24, at 20). *See Wilkie v. Robbins*, 551 U.S. 537, (2007); *Bush v. Lucas*, 461 U.S. 367 (1983).

action. The Estate may file an Amended Complaint within **thirty (30) days** of the date of this Order.[7]

**DONE and ORDERED** in Chambers at the James Lawrence King Federal Justice Building and United States Courthouse in Miami, Florida, on this 23rd day of January, 2019.

JAMES LAWRENCE KING
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF FLORIDA

cc:    **All Counsel of Record**

---

[7] Plaintiff must observe all deadlines going forward, or the action will be subject to dismissal for lack of prosecution.

8